## State of Vermont v. Dana K. Anderson

[565 A.2d 1342]

No. 87-070

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed August 4, 1989

*Karen E. Russell*, Windham County Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.

*Theodore C. Kramer*, Brattleboro, for Defendant-Appellant.

**Morse, J.** Defendant appeals a jury conviction of driving while under the influence of intoxicating liquor in violation of 23 V.S.A. § 1201(a)(2).[1] We affirm.

---

[1] 23 V.S.A. § 1201(a)(2) provides that a person "shall not operate, attempt to operate, or be in actual physical control of any vehicle on a highway while ... under the influence of intoxicating liquor."

On June 4, 1986, at about 10:15 p.m., Trooper Lionel Shapiro of the State Police responded to an accident report from his dispatcher. Approximately two minutes later, he arrived at the scene of the alleged "accident," and observed a car located about fifteen feet off the southbound lane of Interstate 91. There were marks going off the road onto the grass. The car was stopped just in front of a rock ledge. Its engine was off, although the key was in the "on" position, the lights were on, and the car's defroster fan was running. Defendant, the only occupant, was slumped in the driver's seat. Trooper Shapiro, who first feared defendant dead, found him to be unresponsive and barely breathing, with saliva drooling out of his mouth. The trooper called an ambulance, which took defendant to the hospital, where he was treated in the emergency room.

After defendant had been treated, and approximately two hours after he was discovered by the trooper, the emergency room doctor allowed Shapiro to speak with defendant and take a breath test. Shapiro, the only witness at trial, testified that he suspected defendant of a DUI offense and took the breath sample for that purpose. The sample indicated an alcohol level of .11 percent. Shapiro also testified that he had smelled a faint odor of alcohol on defendant's breath while in the vehicle.

After the State presented its evidence, and again after the jury rendered its verdict, defendant moved for a judgment of acquittal, arguing that the evidence was insufficient to support a conviction. The trial court denied the motion.

> The sole issue raised by a motion for acquittal under V.R.Cr.P. 29 is "whether the prosecution has introduced evidence fairly and reasonably tending to show the defendant's guilt, that is, whether the jury on that evidence would be justified in finding guilt beyond a reasonable doubt." We reiterate that, on appeal, we will view the evidence in the light most favorable to the State, excluding the effect of modifying evidence.

State v. Robillard, 146 Vt. 623, 626, 508 A.2d 709, 711 (1986) (citations omitted) (quoting State v. Poirier, 142 Vt. 595, 599, 458 A.2d 1109, 1111 (1983)). In our view, the evidence presented by the State in this case met this test without difficulty. One merely has to ask, how likely is it that defendant, while sober, drove off the interstate on to the grass,

stopping just in front of a rock ledge, leaving the keys in the "on" position, the lights on and the fan running, and only then proceeded to drink until he passed out? The likelihood of this scenario is so remote that the State's evidence, albeit circumstantial, was more than sufficient to persuade a jury to find defendant guilty beyond a reasonable doubt of the crime charged. See *State v. Broe*, 146 Vt. 135, 139–40, 498 A.2d 1039, 1042 (1985).

■■ It is well established that guilt may be proved by circumstantial evidence alone. *State v. Warner*, 151 Vt. 469, 472, 560 A.2d 385, 387 (1989) (Gibson, J.).

> The sufficiency of circumstantial evidence to support a conviction is measured against the same standard as all other evidence: it will sustain a conviction if sufficient to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt. In addition, the State is not required to exclude every reasonable hypothesis of innocence in proving a case with circumstantial evidence.

*Id.* at 472, 560 A.2d at 387 (citations omitted). The circumstantial facts in evidence—the proximity to the highway, the position of the car, the keys, the lights, the fan, and, most important, defendant's condition at the time he was found and two hours later—together "permit the jury to infer that the intoxicated condition of the defendant was continuous from the time of operation until the time he was discovered by the police." *State v. Willette*, 142 Vt. 78, 80, 451 A.2d 821, 822 (1982).[2]

*Affirmed.*

---

[2] The cases cited by the dissent are readily distinguishable. In *State v. Clark*, 130 Vt. 500, 296 A.2d 475 (1972), where this Court upheld a directed verdict for the defendant, there was no evidence of the time of operation of the vehicle. Police had come upon the defendant standing beside his overturned truck. He was intoxicated when the police arrived, but "[e]ntirely lacking in the presentation of the State was any evidence, direct *or circumstantial*, of the time when the defendant had the accident." *Id.* at 503, 296 A.2d at 477 (emphasis added). For all anyone knew in *Clark*, the defendant could just as well have done his drinking after the accident. *State v. Sanford*, 118 Vt. 242, 108 A.2d 516 (1954), a case decided under the now-discredited doctrine that the circumstances must exclude every reasonable theory of

**Gibson, J.,** dissenting. I respectfully dissent. The majority concludes that while there was no direct evidence of defendant's intoxicated operation of his vehicle, there was sufficient circumstantial evidence from which the jury could infer that defendant's intoxication and his operation of his car on a highway occurred simultaneously. As we recently reiterated in *State v. Warner,* 151 Vt. 469, 472, 560 A.2d 385, 387 (1989), our disposition of the case cannot turn on whether the evidence proffered was direct or circumstantial, since the burden on the State is the same in either case.

Instead, it is our duty in reviewing a case such as this to scrutinize the totality of the evidence, and, as the majority points out, to do so "in the light most favorable to the State, excluding the effect of modifying evidence." *State v. Robillard,* 146 Vt. 623, 626, 508 A.2d 709, 711 (1986). It is also axiomatic that the State must prove every element of the offense beyond a reasonable doubt. *State v. Boise,* 146 Vt. 46, 48, 498 A.2d 495, 496 (1985). Thus, it was incumbent upon the State to prove that defendant operated his vehicle on a highway while he was intoxicated.

The State offered direct evidence of defendant's intoxication: Trooper Shapiro testified as to the smell of alcohol on defendant's breath and his appearance, and the blood test showing a .11 percent blood alcohol content was also introduced. It is clear that viewing this evidence in the light most favorable to the State, it was sufficient to support a finding that *at the time Trooper Shapiro found defendant by the side of the road,* he was intoxicated.

Evidence was also introduced as to the circumstances under which defendant was found. He was slumped in the front seat of his car; the car was fifteen feet off the surface of the road on a level area; the key was in the ignition although the engine was not operating; the headlights were on; and the fan was running. In addition, there were a number of empty beer bottles and an empty beer can on the floor of defendant's car.

---

innocence, can be similarly distinguished. In the present case, there are numerous circumstances from which the jury could infer that defendant did not pull off the road to drink. The facts amply support the inference that defendant was already in a state of inebriation when he pulled off the road and his car stalled.

Tire marks led from the paved surface of the interstate to the car.

The majority claims that on that evidence, the jury could reasonably have inferred that defendant not only operated his car to reach the spot where Trooper Shapiro found him, but did so while he was intoxicated. I cannot agree. There was no evidence, either direct or circumstantial, that defendant was under the influence of intoxicating liquor while operating his vehicle on Interstate 91. The State conceded at oral argument that the grassy area where defendant's car was stopped was not a "highway" within the meaning of 23 V.S.A. § 1201, and Trooper Shapiro candidly admitted on cross-examination that he did not know how long defendant's car had been parked off the interstate. Further, there was no evidence that the person who first reported the "accident" to the State Police dispatcher actually saw defendant's vehicle being driven off the highway, nor was there any evidence to show when the five beer containers in defendant's car were consumed. As Justice Peck noted in *State v. Broe*, 146 Vt. 135, 139, 498 A.2d 1039, 1042 (1985), "[w]ithout more, this failure on the part of the prosecution would have required a directed verdict in defendant's favor." In *Broe*, however, there was more, in that "[t]he evidence clearly suggested erratic driving," *id.* at 140, 498 A.2d at 1042, and we sustained the conviction. Here, the tire marks leading from the paved highway to the car's resting place did not weave, but led straight from the road to the grassy patch in which the car was parked. It is no more than pure speculation as to whether defendant was under the influence of intoxicating liquor when he operated his car on the highway.

Our obligation on appeal is not to weigh the likelihood of defendant's actions, as the majority would have us do. Intuition, or even past experience, may tell us that one does not ordinarily end up drunk on the side of a highway without having driven there in a state of intoxication. But this Court, and the trial court before us, cannot reach legal conclusions based on intuition or experience. Instead, we require the State to present evidence from which facts can be found, so that the facts can serve as building blocks for the legal conclusions. Here, the majority relies on just such intuition rather than a factual showing that defendant's insobriety was in some way—

*any* way—linked with his operation of the car on Interstate 91. In doing so, the majority opinion strains to distinguish past precedents which are virtually identical to the instant facts.

In *State v. Clark*, 130 Vt. 500, 296 A.2d 475 (1972), two police officers went to the scene of an accident, where they found an overturned pickup truck off the side of the road. The officers observed that the driver, who was leaning against the truck when they arrived, exhibited various signs consistent with intoxication. Neither officer, however, testified as to the exact time of the accident, how long the driver had been in the vehicle before he got out of it, nor was there any evidence that he had drunk any alcohol prior to the accident. On those facts, this Court upheld a directed verdict in favor of the defendant:

> Entirely lacking in the presentation of the State was any evidence, direct or circumstantial, of the time when the defendant had the accident....
>
> But it is obvious to have the inference of being under the influence of intoxicating liquor applied retroactively in the present case that the burden was upon the State of showing by evidence that the accident ... occurred within a time that the intoxicated condition, in which he was found at the scene, had been continuous since the accident time.

*Id.* at 503–04, 296 A.2d at 477.

Similarly, in *State v. Sanford*, 118 Vt. 242, 108 A.2d 516 (1954), the Court concluded that there was insufficient linkage between the defendant's drinking and his driving to sustain a conviction. In that case, the defendant was found asleep on the front seat of his car, which had been driven off the left-hand side of a town road into a ditch. The motor was not running, and the investigating officers did not recall whether the ignition switch was on or off. A number of empty beer bottles were found on the floor of the car. In reversing the conviction, the Court stated:

> There is no direct evidence that the respondent drank any intoxicating liquor before he drove off the road, nor is there any evidence as to the length of time he had been there after the motor stopped running. For aught that appears he may have been there much longer than enough to get into the condition in which he was found by the

officers. The evidence leaves it a matter of conjecture as to whether he was under the influence of intoxicating liquor when he operated his car ....

*Id.* at 244, 108 A.2d at 517.

The facts in *State v. Willette,* 142 Vt. 78, 451 A.2d 821 (1982), were somewhat different, in that there was reliable circumstantial evidence that the defendant was intoxicated at the time of operation. There, a state trooper discovered a car parked facing south in the northbound passing lane of Interstate 89. None of its lights or warning signals were on, and there were no flares or other warning devices to alert oncoming traffic. The car's right front tire was flat. The trooper saw nine beer bottles, only one of which was full, in the car's passenger compartment. The driver was eventually found walking in the breakdown lane a quarter-mile from his car, exhibiting various signs of intoxication. He told the trooper that while driving south on I-89 he got a flat tire, and decided to cross over to the northbound lane because, since traffic was lighter there, it would be a better place to park.

We upheld the DWI conviction of the driver in *Willette* because, unlike *Clark,* there was "other reliable evidence" that he operated his car while intoxicated:

> The jury could have reasonably inferred that only someone with impaired judgment would have left a car, admittedly moveable, in a traveled portion of the interstate highway without warning lights. Given the intoxicated state of the defendant when the police found him, his obviously impaired judgment in leaving the car where he did, and his admission that he was the driver, the jury could have concluded that the defendant was intoxicated at the time he drove the car to the location where it was found.

*Id.* at 80–81, 451 A.2d at 822. This Court distinguished the facts in *Willette* from those in *Clark,* where "[t]he accident itself was not" evidence of intoxication, since "an unintoxicated person could also have had such an accident." *Id.* at 81, 451 A.2d at 822.

The present case, in my opinion, is indistinguishable from *Clark* and *Sanford.* On the evidence presented by the State at trial, there was no showing that defendant's decision to pull off the highway for an indeterminate length of time was a

product of impaired judgment, nor was there any other showing that his operation on Interstate 91 occurred while he was intoxicated. Therefore, I would reverse. The Chief Justice joins in this dissent.